UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAR TECHNOLOGY CORPORATION, and
PARTECH, INC.,

                          Plaintiffs,                            **AMENDED COMPLAINT**
                                                                     Civil Action No. 6:22-cv-1121
                          v.                                             (GLS/ATB)

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, TRAVELERS
INDEMNITY COMPANY OF CONNECTICUT,
and THE TRAVELERS INDEMNITY
COMPANY,

                          Defendants.
_____

       Plaintiffs PAR Technology Corporation, and ParTech, Inc., (collectively referred to herein as "PAR"), by their attorneys, The Law Office of Kevin G. Martin, 1600 Genesee Street, Utica, New York 13502, (315)507-3765, as and for their Amended Complaint, state as follows:

### NATURE OF THE ACTION

       1.      This is an action by PAR for breach of contract and declaratory judgment against defendants Travelers Property Casualty Company of America ("Travelers Property Casualty"), Travelers Indemnity Company of Connecticut ("Travelers Connecticut"), andTravelers Indemnity Company ("Travelers Indemnity") (collectively referred to herein as "Travelers") arising out of a series of Commercial General Liability ("CGL") policies issued by the defendant Travelers entities, and paid for by PAR, continuously throughout the period December 31, 2013 through December 31, 2019 (referred to herein collectively as the "Travelers Policies").

2. Plaintiff PAR has duly demanded, in accordance with all applicable terms and conditions of the Travelers Policies, that the defendant Travelers entities defend PAR and that they pay all sums PAR becomes obligated to pay, in connection with the defense and resolution of the putative class action initially brought by plaintiff Kandice Neals in the Circuit Court of Cook County, Illinois, and subsequently removed to the United States District Court For The Northern District of Illinois, Eastern Division (collectively referred to herein as the "Underlying Matter").

3. Despite due demand, Travelers has steadfastly refused to defend its insured PAR in the Underlying Matter, and has denied coverage for the sums paid, and to be paid, by PAR in resolving the Underlying Matter by way of a class-wide settlement.

4. PAR now seeks an award of damages for defendant Travelers entities' breaches of their obligations under the Travelers Policies, a declaration of PAR's rights and Travelers' obligations with respect to the coverage afforded under the Travelers Policies, an award of extra-contractual damages due to Travelers' bad faith and unfair dealing with respect to the handling of the claim submitted by PAR to defendants and for defendant Travelers entities' improper refusal to provide coverage for the claims in the Underlying Matter, and an award of damages for defendants' unfair business practices in violation of New York General Business Law §349.

## THE PARTIES

5. Plaintiff PAR Technology Corporation is a Delaware corporation with its principal place of business located at PAR Technology Park, 8383 Seneca Turnpike, New Hartford, New York; plaintiff ParTech, Inc. is a wholly owned subsidiary of PAR Technology Corporation.

2

6. Upon information and belief, defendant Travelers Property Casualty Company of America: (i) is a wholly-owned subsidiary of The Travelers Companies, Inc.; and (ii) at all relevant times hereto, has been licensed to do, and in fact does, insurance business in the State of New York.

7. Upon information and belief, defendant Travelers Indemnity Company of Connecticut: (i) is a wholly-owned subsidiary of The Travelers Companies, Inc.; and (ii) at all times relevant hereto, has been licensed to do, and in fact does, insurance business in the State of New York.

8. Upon information and belief, defendant The Travelers Indemnity Company is: (i) a wholly-owned subsidiary of The Travelers Companies, Inc.; and (ii) at all relevant times hereto, has been licensed to do, and in fact does, insurance business in the State of New York.

## JURISDICTION AND VENUE

9. Pursuant to 28 U.S.C. §1332, as well as other statutory, constitutional, and common law bases, this Court has jurisdiction over the subject matter of this action as the amount in controversy exceeds $75,000 and the parties are citizens of different states.

10. This Court also has jurisdiction over each of the Travelers defendants because each defendant is licensed to do, and does, insurance business within the State of New York, has been properly served process, is located in the State of New York and/or because the causes of action arise in whole or in part from each defendant's transaction of business in the State of New York.

11. Pursuant to 28 U.S.C. §1391(b)(2), (d) and §1441(a), venue is proper in this Court because the action was properly commenced in New York State Supreme Court, Oneida County, and defendants removed the case to this Court, because Plaintiff PAR maintains its principal place of business in the Northern District of New York, and because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of New York.

# BACKGROUND

A. <u>The Travelers Policies.</u>

12. The following Travelers Property Casualty CGL Policies were issued to PAR: (i) Policy # H-630-3205P868-TIL-13, with a policy period of December 31, 2013 to December 31, 2014 (the "2014 Travelers Property Casualty Policy"); and (ii) Policy # H-630-3205P868-TIL-14, with a policy period of December 31, 2014 to December 31, 2015 (the "2015 Travelers Property Casualty Policy").

13. The Following Travelers Connecticut CGL Policies were issued to PAR: (i) Policy # HEE-630-162D6603-TCT-15, with a policy period of December 31, 2015 to December 31, 2016 (the "2016 Travelers Connecticut Policy"); and (ii) Policy # HEE-630-162D6603-TCT-16, with a policy period of December 31, 2016 to December 31, 2017, (the "2017 Travelers Connecticut Policy").

14. The following Travelers Indemnity CGL Policies were issued to PAR: (i) Policy # HEE-630-162D6603-TCT-17, with a policy period of December 31, 2017 to December 31, 2018 (the "2018 Travelers Indemnity Policy"); and (ii) Policy # HEK-630-162D6603-IND-18, with a policy period of December 31, 2018 to December 31, 2019 (the "2019 Travelers Indemnity Policy").

15. Each of the Travelers Policies has a $1 million Limits of Insurance for "Personal and Advertising Injury Limit", with an "Each Occurrence Limit" of $1 million; each Travelers Policy also contains a "General Aggregate Limit" of $2 million.

16. None of the Travelers Policies contain any deductible and/or self-insured retention that first needed to be paid by PAR before Travelers was obligated to defend PAR in the Underlying Matter and/or to make payments as required by the policies. As such, each of the Travelers Policies

provide first dollar coverage for any suit seeking damages for personal injury to which a policy applies.

17. Each of the Travelers Policies is made up of a boilerplate and identical sixteen (16) page policy form described by Travelers as its "Commercial General Liability Cov Form", and labeled as "CG 00 01 10 01 copyright ISO Properties, Inc, 2000" (referred to herein as the "Basic Policy Form").

18. Coverage B of the Basic Policy Form found in each of the Travelers Policies-entitled "Coverage B Personal and Advertising Injury Liability"- contains the following "Insuring Agreement":

> 1. Insuring Agreement
>
> ****
>
> b. We [Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies.

19. That same Insuring Agreement found in the Basic Policy Form for Coverage B-Personal Injury Liability-also states that: "(w)e [Travelers] will have the right and duty to defend the insured against any 'suit' seeking those damages".

20. The Basic Policy Form defines "Personal and Advertising Injury", in relevant part, as follows:

> "Personal and advertising injury means injury, including consequential 'bodily injury', arising out of one or more of the following offenses:
>
> ***
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy. (Section V, "DEFINITIONS").

5

21. In addition, the 2014 Travelers Property Casualty Policy and the 2015 Travelers Property Casualty Policy each also contain an Endorsement form identified by Travelers as "CG F4 74 07 08" and written on paper containing the caption "2008 The Travelers Companies, Inc. Includes the copyrighted materials of Insurance Services Offices, Inc. with its permission". This Endorsement is entitled: "AMENDMENT OF COVERAGE B- PERSONAL AND ADVERTISING LIABILITY-TECHNOLOGY-NEW YORK". (the "Travelers Property Casualty Technology New York Endorsement").

22. Section G to the Travelers Property Casualty Technology New York Endorsement is entitled "ADDITIONAL DEFINITIONS", and states that: "the following is added to the DEFINITIONS Section [of the Basic Policy Form]":

\*\*\*

"Personal Injury" a. (m)eans injury, other than 'advertising injury, caused by one or more of the following offenses:
\*\*\*

(5) Oral or written publication, including publication by electronic means, of material that:
\*\*\*

(c) Discloses information about a person's private life.

B. <u>The Illinois Biometric Privacy Act ("BIPA").</u>

23. The Illinois Biometric Privacy Act ("BIPA"), 740 ILCS 14/1 et seq., requires entities that collect biometric data-such as fingerprints- to (i) inform people that their data is being collected, who is collecting it, and why it is being collected; and (ii) receive written consent regarding collection of such data.

6

24. The Illinois legislature unanimously passed BIPA in 2008 to provide individuals recourse when companies fail to handle appropriately their biometric data in accordance with the statute.

25. BIPA makes it unlawful for any private entity to "collect, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first: (i) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (ii) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (iii) receives a written consent release executed by the subject of the biometric identifier or biometric information… 740 ILCS 14/15(b).

26. BIPA also establishes standards for how companies must handle Illinois customers' biometric data, including requiring companies to develop and comply with a written policy establishing a retention schedule and guidelines for destroying permanently biometric data. 740 ILCS 14/15(a).

27. The Illinois Supreme Court assessed the legislature's intent in passing BIPA by declaring that the statute:

> Vests in individuals and customers the right to control the biometric information by requiring notice before collection and giving them the power to say no by withholding consent…These procedural protections are particularly crucial in our digital world because technology now permits the collection and storage of an individual's unique biometric identifiers-identifiers that cannot be changed if compromised or misused. When a private entity fails to adhere to the statutory procedures…the right of the individual to maintain [his or her] biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized. This is no mere technicality. The injury is real and significant.

Rosenbach v. Six Flags Ent. Corp., 129 N.E.3d 1197, 1206 (Ill.2019).

        C.        The Neals Litigation: The Underlying Matter

28.      Plaintiff Candice Neals originally filed her putative class action complaint against ParTech's parent company PAR Technology Corporation on or about March 21, 2019, in the Circuit Court of Cook County, Illinois (the "Illinois State Court Complaint").

29.      The Illinois State Court Complaint was served on PAR on or about July 24, 2019. On or about August 22, 2019, PAR removed the case to the United States District Court for The Northern District of Illinois Eastern Division entitled *Neals v. ParTech, Inc.*, Civil Action No. 19-CV-05660 (the "Federal Court Suit").

30.      PAR then moved to dismiss the Federal Court Suit in the Northern District of Illinois; that motion was granted without prejudice by the Northern District of Illinois, and plaintiff Neals was allowed to amend her class action complaint, and to substitute in ParTech as the named defendant.

31.      According to the Amended Complaint in the Federal Court Suit, the cloud-based point of sale ("POS") systems developed by PAR were used by businesses, primarily restaurants, to track their employees' time by using a biometric finger scanner.

32.      The Amended Complaint further alleged that unlike other methods for keeping track of employee's time at work "which can be changed or replaced if stolen or compromised-fingerprints are unique, permanent biometric identifiers associated with the employee. This exposes employees to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached or otherwise exposed, employees have no means by which to prevent identity theft and unauthorized tracking".

33. The Amended Complaint further alleged that "[d]espite [BIPA], PAR disregards restaurant employees' statutorily protected privacy rights and unlawfully collects, stores, and uses their biometric data in violation of BIPA"…[and] [a]ccordingly this Complaint seeks an order: (i) declaring that Defendant's (PAR's) conduct violates the BIPA…".

34. The Amended Complaint also alleges that "PAR failed to inform restaurant employees of the complete purposes for which it collects the sensitive biometric data or to whom the data is disclosed, if at all.  Indeed, they are actually transmitting their sensitive biometric data to PAR".

35. In addition, the Amended Complaint claimed that "by negligently collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, PAR violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, et seq,".

36. After a status hearing in late February, 2020, the parties began written discovery, including document productions by PAR.  The parties also engaged in discovery motion practice and related hearings.

D. <u>Mediation and Settlement.</u>

37. In October, 2020, the parties in the Underlying Matter began to explore the potential for a class-wide settlement and exchanged additional informal discovery related to the size and composition of the putative class.  After many settlement discussions, including involvement by a Federal Magistrate Judge, in March of 2021 the Parties agreed to participate in a formal mediation.

38. On April 28, 2021, the parties in the Underlying Matter attended a full-day formal mediation with a retired Illinois Appellate Court Judge.  After additional negotiations, the parties executed a Memorandum of Understanding on June 30, 2021.  The parties then negotiated the final

terms of a settlement agreement over the following six (6) months, and ultimately executed the final Settlement Agreement on December 23, 2021.

39. In January, 2022 plaintiff in the Underlying Matter moved for an Order Granting Preliminary Approval of Class Action Settlement Agreement (the "Preliminary Approval Motion". On March 3, 2022, the Illinois Federal Court granted the "Preliminary Approval of Class Action Settlement Agreement, Certifying Settlement Class, Appointing Class Representative, Appointing Class Counsel, and Approving Notice Plan" ("Order Granting Preliminary Approval of Class Action Settlement").

40. On July 20, 2022, the Northern District of Illinois in the Underlying Matter entered the Final Judgment and Order of Dismissal With Prejudice (the "Final Judgment and Order of Dismissal With Prejudice") wherein the Court: (i) granted Plaintiff's Motion for Attorneys' Fees, Expenses, and Incentive Award; (ii) granted Plaintiff's Motion for Final Approval of Class Action Settlement; and (iii) entered Judgment and Order of Dismissal with Prejudice.

41. The July 20, 2022 the Final Judgment and Order of Dismissal With Prejudice confirmed final certification of the Settlement Class for entering final judgment as follows:

> All persons who scanned their fingers in the State of Illinois through a scanner attached to a point of sale system ("POS system") issued, leased, or sold by ParTech, Inc., and for whom any alleged biometric data (including without limitation any alleged biometric identifiers or any alleged biometric information) relating to that scan was shared with, or stored by, Defendant between March 21, 2014 and March 3, 2022.

42. The Settlement provided that PAR establish a $790,000.00 non-reversionary Settlement Fund from which each Settlement Class Member who submits a valid claim will be entitled to a pro rata portion after payment of Settlement Administration Expenses, attorneys' fees and costs,

and any incentive award, if awarded by the Court.  PAR has met its obligations under the Settlement Agreement, including already fully funding the entire $790,000.00 called for under the Settlement Agreement.

### PAR's NOTICES and TRAVELERS' DENIAL and INACTION

A. <u>PAR's Initial Notice to Travelers.</u>

43. Even before being served with the original Complaint in the Illinois State Court litigation, PAR, via insurance broker MARSH USA Inc., gave Notice of this suit to Travelers by email dated March 22, 2019. ("PAR's Initial Notice").  PAR's Initial Notice to Travelers stated, in relevant part:

> INSURED: PAR TECHNOLOGY CORPORATION
>
> DATE OF LOSS: 21-Mar-19
>
> TYPE OF COVERAGE: General Liability
>
> Attached please find correspondence that will serve as a First Report of Loss
> Note: The insured has not yet been served.
> Notice of loss was sent to all carriers listed in the policy ledger embedded in this email.
> Please refer to the following for your policy information:
>
> ***
>
> This matter is reported under any and all applicable policies whether or not cited.
> Kindly acknowledge receipt of this correspondence to the undersigned and the insured, noting your file number and the names and e-mail address of the claim handler assigned to this matter.

44. PAR's Initial Notice to Travelers dated March 21, 2019, specifically stated that "[t]his matter is reported under any and all applicable policies whether or not cited".

B. <u>Travelers' Denial of Coverage.</u>

11

45. By letter dated March 26, 2020, more than one full year after PAR's Initial Notice of the Underlying Matter, Travelers wrote to PAR stating that "this matter does not fall within the scope of the commercial general liability coverage provided by policy number 630-162D6603 issued by Travelers Indemnity Company, effective December 31, 2017 to December 31, 2018 (the "Policy"). Travelers therefore is unable to defend or indemnify PAR Technology with regard to this claim". (referred to hereinafter as the "Travelers Denial of Coverage").

46. The Travelers Denial of Coverage Letter states that plaintiff in the Underlying Matter "has made no claim for 'personal injury'". Travelers, however bases, at least in part, its determination that there is no covered "personal injury" upon an incomplete, and therefore inaccurate, definition of the term "personal injury" contained in that policy relied upon by Travelers.

47. Travelers' intentional misreading of the very policy form and endorsements drafted by and/or incorporated by Travelers is a gross disregard for PAR's interests, and evidences a pattern of behavior of conscious and/or knowing indifference as to the interests of not only PAR, but also as to the interests of Travelers' insureds other than PAR.

48. The Travelers Denial of Coverage references, relates to, and relies upon only one Travelers Policy--the 2018 Travelers Indemnity Policy.

49. Travelers never has responded to PAR's request for coverage, never has issued a coverage determination letter, and thus never has denied coverage with respect to the following five (5) Travelers Policies at issue herein: (i) the 2014 Travelers Property Casualty Policy; (ii) the 2015 Travelers Property Casualty Policy; (iii) the 2016 Travelers Connecticut Policy; (iv) the 2017 Travelers Connecticut Policy; and (v) the 2019 Travelers Indemnity Policy.

C.   PAR's Notice of Settlement

50. By email dated July 7, 2021, PAR's Associate General Counsel wrote to the Travelers Claim Professional, Business Torts Claim, Technology Claim Practice handling this matter (and also the author of the Traveler's March 26, 2020 Denial of Coverage Letter):

> to inform Travelers Indemnity Company ("Travelers") that its Insured PAR Technology Corporation, through its wholly-owned subsidiary ParTech, Inc., has signed a Memorandum of Understanding ("MOU") between Plaintiff Kandice Neals and Defendant ParTech, Inc., ("PAR")(collectively "The Parties"). The MOU sets forth the material points associated with the resolution of the class action captioned: Kandace Neals, individually and on behalf of others similarly situated v. ParTech, Inc., 19-cv-056660 (N.D. Ill.)(the "Action"). I have attached the relevant complaint and amended complaint again for your convenience" ("PAR's Notice of Settlement").

51. PAR's July 7, 2021 Notice of Settlement also informed Travelers that:

> [T]he Parties will be drafting and executing a formal Settlement Agreement. If Travelers would like to review and comment on such agreement, please let me know, and PAR will share a draft of the Agreement whenever one is available. Additionally, if Travelers has any comments and/or questions, please do not hesitate to contact me.

52. Travelers ignored PAR's Notice of Settlement, and instead: (i) never properly replied to PAR's Notice of Settlement; (ii) never presented PAR with any questions or comments regarding the proposed settlement; and (iii) never accepted PAR's offer to allow Travelers to review and comment on the settlement agreement.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

53. PAR repeats and realleges each and every allegation contained in paragraphs 1-52 as if fully set forth herein.

54. PAR has given proper notice to Travelers of the Underlying Matter and has properly demanded it be defended in the Underlying Matter, and that Travelers pay those sums PAR becomes legally obligated to pay as damages in connection with the Underlying Matter.

13

55. PAR has fully satisfied all applicable contractual obligations under the Travelers Policies and has complied with all applicable terms and conditions of the Travelers Policies.

56. Travelers has waived and/or is estopped from asserting that PAR has failed to fulfill any obligations or to comply with any conditions to recovery under the Travelers Policies, and from asserting any limitations or exclusions from coverage for the Underlying Matter.

57. The Underlying Matter constitutes a "Personal Injury" covered under the Travelers Policies.

58. The Travelers Policies obligated Travelers to defend PAR in any suit alleging "Personal Injury", and to pay all sums PAR was, and is, obligated to pay as damages because of such "Personal Injury" alleged in the Underlying Matter.

59. PAR reasonably expected Travelers to defend it in the Underlying Matter and to pay sums PAR becomes legally obligated to pay as damages in connection with the Underlying Matter.

60. For the past three plus (3+) years the Travelers defendants have failed to defend its Insured PAR in the Underlying Matter, and no Travelers Defendant has agreed to pay the sums PAR has, and may, become legally obligated to pay as damages in connection with the Underlying Matter.

61. Defendant Travelers entities' steadfast refusal to defend its insured PAR in the Underlying Matter, and their refusal to pay all sums that their insured PAR becomes obligated to pay as damages in connection with the Underlying Matter constitute breaches of defendants' obligations under the Travelers Policies. As a result of these breaches, PAR has been damaged in an amount not less than $1,265,000. That amount will continue to increase as additional fees and costs are incurred through the completion of the settlement process.

**SECOND CAUSE OF ACTION**

**(Declaratory Judgment)**

62. PAR repeats and realleges each and every allegation contained in paragraphs 1-61 as if fully set forth herein.

63. The Travelers Policies are valid and enforceable contracts and were in full force and effect at all relevant times.

64. An actual and justiciable controversy within the meaning of Article III, Section 2, Clause 1 of the Untied States Constitution exists between the parties concerning coverage for the Underlying Matter under the Travelers Policies.

65. As a result of this controversy, Plaintiff PAR is entitled to a declaration that:

(i) each of the Travelers Defendants failed to honor its contractual duty to defend PAR in the Underlying Matter;

(ii) all costs already incurred and paid, along with those costs to be paid in the future, by PAR in defending itself in the Underlying Matter do not impair or reduce the Limits of Liability provided by each of the Travelers Policies;

(iii) Travelers' failure to provide written notice of any disclaimer and/or denial of coverage with respect to the 2014 Travelers Property and Casualty Policy, the 2015 Travelers Property and Casualty Policy, the 2016 Travelers Connecticut Policy, the 2017 Travelers Connecticut Policy, and the 2019 Travelers Indemnity Policy (collectively referred to herein as the "Non-Responsive Policies") bars each of the Travelers Companies from attempting now in this coverage litigation to rely upon any and all exclusions and/or conditions so as to contest coverage in this litigation;

(iv) the Underlying Matter is covered under one, or more, of the Travelers Policies;

(v) PAR may select any one, or more, of the Travelers Polices for payment to PAR; and

(vi) Travelers is obligated to pay all past and future sums that PAR has paid, or will, pay, as damages in connection, with the Underlying Matter; and

66. PAR has no adequate remedy at law sufficient to compensate them in lieu of the issuance of such declaratory relief.

## THIRD CAUSE OF ACTION
### (Extra-Contractual Damages)

67. PAR repeats and realleges each and every allegation contained in paragraphs 1-66 as if fully set forth herein.

68. An actual and justiciable controversy within the meaning of Article III, Section 2, Clause 1 of the Untied States constitution exists between the parties concerning the conduct of defendant insurers relating to their handling of the Underlying Matter submitted by PAR for coverage.

69. Defendants' unfair claims practices and breaches of the covenants of good faith and fair dealing in connection with PAR's request for coverage for the underlying Matter include, but are not limited to: (i) with respect to each of the Non-responsive Policies, defendants' failure to provide a timely and comprehensive reply- in fact their failure to reply in any way whatsoever - to PAR's Initial Notice to Travelers dated March 22, 2019; (ii) Travelers Denial of Coverage Letter reliance upon an incomplete, and therefore inaccurate, assertion of the definition of "personal injury" constitutes a deceptive claims handling practice; and (iii) defendant insurers failed to act in good faith by compelling its insured PAR to initiate this insurance coverage litigation in order to get the insurance coverage it paid for under the policies issued by defendants.

70. Travelers has acted, and continues to act, in such gross disregard for the rights of PAR, and upon information and belief in such disregard for the rights of its insureds other than PAR, that the imposition of consequential and extra-contractual damages is warranted.

## FOURTH CAUSE OF ACTION
### (New York Business Law §349)

71. PAR repeats and realleges the allegation of paragraphs 1-70 above as if fully set forth herein.

72. The Travelers Policies are standard policies available to and marketed to consumers located in New York State and beyond and such marketing and sales constitute consumer-oriented conduct.

73. Upon information and belief, as a matter of Travelers policy or practice, the Travelers Defendants engage in unfair business practices by: 1) failing to rely upon the applicable, correct paragraphs of the Travelers Policies, 2) failing to respond to requests for coverage under relevant policies, 3) delaying responding to requests for coverage for one year or longer, all to avoid paying valid claims under their policies of insurance.

74. The conduct articulated in the paragraphs above, and additional conduct currently known only to Travelers, including but not limited to excessively delaying responses to notices of claims and requests for coverage, failing to respond at all to notices of claims and requests for coverage, referring to improper and irrelevant policy paragraphs, misreading definitions that were drafted by Travelers are unfair or deceptive business practices that violate New York Business Law §349.

75. Upon information and belief, the Travelers Defendants' unfair business practices under the Travelers Policies are directed at consumers and have been regularly and repeatedly used to improperly deny consumers coverage.

76. The Travelers Defendants' conduct articulated in the paragraphs above will have a broad impact on consumers not just upon PAR.

77. The unfair and/or deceptive practices articulated herein consist of representations or omissions that are likely to mislead a reasonable consumer acting reasonably under the circumstances and is, upon information and belief, a scheme or practice designed to deceive or mislead consumers and is a violation of New York General Business Law §349.

78. Par has been harmed as a result of the deceptive and unfair business practices articulated above.

**WHEREFORE**, PAR demands judgment:

a. On its First Cause of Action, finding that each defendant breached its contractual obligations to PAR and awarding PAR damages in an amount not less than $1,250,000.00, plus interest;

b. On its Second Cause of Action, declaring that: (i) each defendant breached its contractual obligation to defend PAR in the Underlying Matter; (ii) the Underlying Matter constitutes covered "personal injury" under each of the Travelers Policies; and (iii) each defendant is obligated to pay all past and future fees, costs and expenses, including defense costs, in connection with the Underlying Matter; and

c. On its Third Cause of Action awarding PAR consequential and extra-contractual damages due to defendants' deliberate and reckless breaches of the covenant of good faith and fair dealing with respect not only to PAR, but also with respect to defendants' pattern of behavior with respect to their insureds in addition to PAR in an amount to be determined at trial;

d. On its Fourth Cause of Action for deceptive and unfair business practices due to the Travelers Defendants' deceptive and misleading handling of notices of claim and requests for coverage to consumers at large in an amount to be determined at trial;

e. Granting PAR its attorneys' fees and expenses and the costs and disbursements incurred in connection with this action;

  f. Granting PAR such other and further relief as the Court deems just and proper.

March 10, 2023             THE LAW OFFICE OF KEVIN G. MARTIN

                   *Kevin G. Martin*
                 By: Kevin G. Martin, Esq.
                 Bar Roll No. 505332
                 *Attorneys for Plaintiffs PAR Technology*
                 *Corporation and ParTech, Inc.*
                 1600 Genesee Street
                 Utica, New York 13502
                 (315) 507-3765
                 kmartinlaw@gmail.com

Of Counsel:
William J. Wright, Jr., Esq.
1118 East Seventh Street
Plainfield, New Jersey 07062
(908) 337-7084
williamjwright@aol.com

Barclay Damon
Nicholas R. Constantino, Esq.
Kevin Szczepanski, Esq.
*Attorneys for Travelers Defendants*
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 413-7216
(315) 703-6237 (fax)
(315) 877-6456 (cell)
nconstantino@barclaydamon.com
kszczepanski@barclaydamon.com