UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAR TECHNOLOGY
CORPORATION et al.,

              Plaintiffs,

v.

TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA et al.,

              Defendants.
_____

6:22-cv-1121
(BKS/TWD)

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| The Law Office of Kevin G. Martin<br>1600 Genesee St.<br>Utica, NY 13502 | KEVIN MARTIN, ESQ. |
| **FOR THE DEFENDANTS:** | |
| Barclay Damon LLP<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, NY 13202 | NICHOLAS CONSTANTINO, ESQ. |
| 80 State Street<br>Albany, NY 12207 | BENJAMIN M. WILKINSON, ESQ. |
| The Avant Building - Suite 1200<br>200 Delaware Avenue<br>Buffalo, NY 14202 | KEVIN D. SZCZEPANSKI, ESQ. |

**Brenda K. Sannes**
**Chief District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiffs PAR Technology Corporation and ParTech, Inc. commenced this diversity action against defendants Travelers Property Casualty Company of America, Travelers Indemnity Company of Connecticut, and The Travelers Indemnity Company, alleging claims for breach of contract, bad faith,[1] and violation of New York General Business Law § 349.  (Am. Compl., Dkt. No. 28.)  Plantiffs requested declaratory relief and an award of attorney's fees.  (*Id.* at 18.)  Now pending is defendants' pre-answer partial motion to dismiss.  (Dkt. No. 35.)  For the reasons that follow, the motion is denied.

## II. Background

### A. Facts[2]

Defendants issued one-year insurance policies to plaintiffs each year from 2013 to 2019.  (Am. Compl. ¶¶ 12-14.)  The policies were

---

[1] The parties appear to agree that New York law governs plaintiffs' breach of contract and bad-faith claims.  (Dkt. No. 35, Attach. 6 at 9-12; Dkt. No. 38, Attach. 3 at 10-17.)

[2] Consistent with the applicable standard of review, the facts are drawn from plaintiffs' amended complaint, (Dkt. No. 28), and presented in the light most favorable to plaintiffs.

"standard policies available to and marketed to consumers located in New York State," (*id.* ¶ 72), and each policy provided that defendants would defend plaintiffs and pay damages in suits related to "personal and advertising injur[ies]," (*id.* ¶ 18).

In 2019, plaintiffs were sued in federal court for allegedly violating the Illinois Biometric Privacy Act. (*Id.* ¶¶ 23, 28-35.) Plaintiffs ultimately agreed to settle the matter for $790,000. (*Id.* ¶¶ 40-42.) However, before settling the matter, plaintiffs notified defendants of the pending suit and requested coverage pursuant to the insurance policies. (*Id.* ¶¶ 43-44.) Defendants took "more than one full year" to respond to plaintiffs' request and denied coverage, claiming that the matter did "not fall within the scope of the commercial general liability coverage" because the suit brought against plaintiffs "made no claim for 'personal injury.'" (*Id.* ¶¶ 45-46.) According to plaintiffs, defendants' determination was an "intentional misreading" of the definition of "personal injury" and part of a pattern of defendants' "conscious and/or knowing indifference as to the interests" of those it insured. (*Id.* ¶¶ 46-47.)

B.   **Procedural History**

Plaintiffs filed an amended complaint in March 2023, alleging claims

for breach of contract, bad faith, and violation of New York General Business Law § 349.  (*Id.* at 13-18.)  Plaintiffs seek money damages, consequential damages, extra-contractual damages, declaratory relief, and attorney's fees.  (*Id.*)  Defendants now move to dismiss plaintiffs' request for declaratory relief, bad-faith claim, § 349 claim, and request for attorney's fees.  (Dkt. No. 35.)

### III.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'"  *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citing *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The Court must accept as true all factual

allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See *EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. Discussion

### A. Declaratory Relief

Defendants argue that plaintiffs' "claim" for declaratory relief should be dismissed because it is duplicative of plaintiffs' breach of contract claim. (Dkt. No. 35, Attach. 6 at 8-9.) Specifically, defendants argue that plaintiffs' contract claim will fully resolve the controversy concerning coverage under defendants' policies, rendering the requested declaratory relief "unnecessary and inappropriate." (*Id.* at 9.)

On the other hand, plaintiffs contend that, if granted, the requested declaratory relief could serve a useful purpose in settling the legal relations in issue by (1) clarifying the obligations of each defendant and determining "what order" any breaching defendants must pay plaintiffs; (2) barring defendants, in the future, from relying on any exclusion in their

policies in an effort to defeat coverage; and (3) assuring that defendants are on notice that they must pay all past and future sums that plaintiffs pay to resolve the suit brought against them.  (Dkt. No. 38, Attach. 3 at 10-13; Am. Compl. ¶¶ 62-66.)  The Court agrees with plaintiffs.

Despite the parties' understanding of declaratory relief as a "cause of action" or "claim," (Am. Compl. at 14-15; Dkt. No. 35, Attach. 6 at 8-9), declaratory judgment is a remedy that may be awarded when an underlying substantive right has been violated, not an independent cause of action or claim.  *See Revitalizing Auto Cmtys. Env't. Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 106 (2d Cir. 2021).  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought*."  28 U.S.C. § 2201(a) (emphasis added).  Federal Rule of Civil Procedure 57 "govern[s] the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201," providing that "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate."  Accordingly, the Declaratory Judgment Act "confer[s] on federal courts

unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995), and a court should consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty," *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citation omitted).

Here, plaintiffs' request for money damages—related to their contract claim—does not foreclose plaintiffs from also seeking declaratory relief related to their contract claim. *See* 28 U.S.C. § 2201(a); Fed. R. Civ. P. 57. If plaintiffs' claims succeed on the merits, the Court will use its discretion to determine whether the requested declaratory relief would serve a useful purpose by settling the legal issues or offering relief from uncertainty. Thus, defendants' motion to dismiss plaintiffs' declaratory-relief "claim" is denied.

**B.   Bad-Faith Claim**

Defendants argue that plaintiffs' bad-faith claim must be dismissed as duplicative of their breach of contract claim because both claims allege the same facts. (Dkt. No. 35, Attach. 6 at 9-12.) The Court disagrees.

"Under New York law, claims [for breach of contract and breach of the implied covenant of good faith and fair dealing] are duplicative when both 'arise from the same facts *and seek the identical damages for each alleged breach*.'" *Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (emphasis added) (quoting *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 426 (1st Dep't 2010)). Upon a requisite showing of bad faith, New York law permits an insured party to recover consequential damages and "extra-contractual" damages beyond the policy limit. *See Panasia Ests., Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203 (2008) (consequential damages); *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 452-54 (1993) (extra-contractual damages beyond the policy limit); *Sukup v. New York*, 19 N.Y.2d 519, 522 (1967) (extra-contractual damages for legal expenses).

Here, even if plaintiffs' breach of contract and bad-faith claims share the same facts, the claims are not duplicative because they seek different damages: plaintiffs' breach of contract claim seeks an amount "not less than $1,265,000" for defendants' failure to defend plaintiffs and pay the settlement in the underlying class action, as allegedly required by the contract, (Am Compl. ¶ 61); plaintiffs' bad-faith claim seeks extra

contractual and consequential damages based on defendants' gross disregard of their contractual rights while handling their insurance claim, (*id.* ¶ 70). Accordingly, because the claims seek distinct damages, plaintiffs' bad-faith claim cannot be dismissed on the basis that it is duplicative of their breach of contract claim. *See, e.g.*, *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 168 A.D.3d 505, 507 (1st Dep't 2019) ("[A] claim for breach of contract and one for bad faith handling of an insurance claim are not necessarily duplicative.") (citing *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 191 (2008)); *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 325 (N.D.N.Y. 2017) (finding breach of contract and bad faith claims were both adequately pleaded because the breach of contract claim sought relief for the defendant's failure to pay the amounts billed; whereas the bad-faith claim sought relief for improper claims handling).

C.   **General Business Law § 349 Claim**

Defendants argue that plaintiffs have failed to state a valid § 349 claim because (1) plaintiffs' amended complaint fails to allege consumer-oriented conduct that has a broader impact on consumers at large and (2) plaintiffs' amended complaint fails to allege that defendants engaged in

9

materially deceptive conduct because defendants' alleged reliance on the wrong provisions of the policies and lack of response to requests for coverage both amount to mere "mistake[s]."  (Dkt. No. 35, Attach. 6 at 12-14.)[3]  Plaintiffs counter that they have stated a valid § 349 claim because (1) the amended complaint alleges that defendants' allegedly deceptive claims handling practices were directed towards other consumers and (2) defendants' alleged failure to handle claims in a timely and honest way constitutes materially deceptive conduct.  (Dkt. No. 38, Attach. 3 at 17-24.)[4]  The Court agrees with plaintiffs.

§ 349 (a) of New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."  To state a

---

[3]  Defendants also argue, for the first time in their reply brief, that plaintiffs have failed to allege an injury as a result of the alleged deception.  (Dkt. No. 43 at 9.)  However, the Court need not entertain this argument because "[t]he law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered."  *Gonzales v. Agway Energy Servs., LLC*, 5:18-cv-235, 2019 WL 910669, at *2 (N.D.N.Y. Feb. 25, 2019) (collecting cases).

[4]  To the extent that plaintiffs' briefing relies on defendants' online marketing material, (Dkt. No. 38, Attach. 3 at 21-23), the Court declines to consider this material because it is not incorporated by or referenced in plaintiffs' amended complaint and because plaintiffs' allegations made in the amended complaint are independently sufficient to state a § 349 claim.

claim under this provision, a plaintiff must adequately allege that "(1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 37 N.Y.3d 169, 176 (2021) (citations omitted), *reh'g denied*, 37 N.Y.3d 1020 (2021).

*1. Consumer-Oriented Conduct*

Although private contract disputes unique to the parties, or single-shot transactions, do not fall within the ambit of the statute, *see N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995), the consumer-oriented conduct requirement is satisfied by showing "that the conduct at issue 'potentially affect[s] similarly situated consumers,'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 27 (1995)). Thus, a plaintiff satisfies the requirement by showing that the defendant's allegedly deceptive act or practice has "'a broader impact on consumers at large.'" *Himmelstein*, 37 N.Y.3d at 177 (quoting *Oswego*, 85 N.Y.2d at 25-27)).

Here, plaintiffs have properly pleaded consumer-oriented conduct because they allege that defendants' policies "are standard policies available to and marketed to consumers[5] located in New York State" and that defendants have "regularly and repeatedly" improperly denied consumers coverage by engaging in the following conduct: "[(]1) failing to rely upon the applicable, correct paragraphs of [defendants' p]olicies, [(]2) failing to respond to requests for coverage under relevant policies, [and] [(]3) delaying responding to requests for coverage for one year or longer." (Am. Compl. ¶¶ 72-73, 75.)  Accordingly, plaintiffs have alleged conduct beyond the private contract dispute, or single-shot transaction, that has the potential to, *and has*, broadly impacted other consumers transacting with defendants.  See *Wendol v. Guardian Life Ins. Co. of Am.*, No.

---

[5] A "consumer" for the purposes of § 349 is not limited to those "'who purchase goods and services for personal, family, or household use,'" *Himmelstein*, 37 N.Y.3d at 176-77 (citations omitted), because the statute "is intentionally broad, applying 'to virtually all economic activity,'" *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324 (2002) (citation omitted), regardless of the purchaser's status as a business or use of the product or service, *see Himmelstein*, 37 N.Y.3d at 177-78.  See N.Y. Gen. Bus. Law § 349(a) (prohibiting "[d]eceptive acts or practices in the conduct of *any* business, trade or commerce or in the furnishing of *any* service") (emphasis added).  Accordingly, it seems, without deciding, that plaintiffs and other purchasers of defendants' policies are protected "consumers" within the meaning of § 349.

106330/05, WL8407541, at *3 (Sup. Ct. Feb. 17, 2006) ("It has been held that an insurer who makes a practice of delaying and denying claims under standard-insurance policies issued to consumers is engaged in consumer-oriented conduct for the purposes of GBL § 349.") (citations omitted); *Acquista v. N.Y. Life Ins. Co.*, 285 A.D.2d 73, 82 (1st Dep't 2001) ("The allegation that the insurer makes a practice of inordinately delaying and then denying a claim without reference to its viability, may be said to fall within the parameters of [§ 349]. Certainly, it goes beyond 'a private contract dispute as to policy coverage.'") (citation omitted); *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 13 (2d Dep't 2012) (finding that the plaintiff properly pleaded consumer-oriented conduct with a broader impact on consumers at large because the complaint alleged "that [the] conduct was part of an institutionalized program and that it constituted a standard practice that was routinely applied" to insurance claimants). Therefore, plaintiffs have properly pleaded consumer-oriented conduct.

*2. Materially Deceptive Conduct*

A defendant's actions are materially deceptive when they are "'likely to mislead a reasonable consumer acting reasonably under the

circumstances.'" *Himmelstein*, 37 N.Y.3d at 178 (citation omitted). Because an insurance policy implies a promise that the insurer will "investigate in good faith and pay covered claims," *N.Y. Univ.*, 87 N.Y.2d at 318, unreasonably delaying and then denying a claim without reference to its viability can mislead reasonable insurance consumers and constitute materially deceptive conduct under § 349. *See Acquista*, 285 A.D.2d at 82; *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2000) (selling insurance an insurer does not intend to provide may be deceptive under § 349); *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344-47 (1999) (finding that the plaintiffs' allegations that an insurer lured them into purchasing policies by creating unrealistic expectations of claims handling practices were sufficiently materially deceptive to state a § 349 claim).

Here, plaintiffs have sufficiently pleaded materially deceptive conduct by alleging that defendants, in an effort to "avoid paying *valid* claims under their policies of insurance," (Am. Compl. ¶ 73 (emphasis added)), engaged in the following conduct that is plausibly likely to mislead an insurance purchaser who is reasonably expecting defendants to reasonably investigate and pay claims in good faith: "excessively

delaying responses to notices of claims and requests for coverage, failing to respond at all to notices of claims and requests for coverage, referring to improper and irrelevant policy paragraphs, [and] misreading definitions that were drafted by [defendants]," (*id.* ¶ 74).  Defendants' argument that their alleged conduct merely amounts to a "mistake" of the policies' terms, (Dkt. No. 35, Attach. 6 at 14), is without merit because "[c]ourts have generally held that since the materially misleading conduct factor requires a reasonableness analysis best suited for a jury, it cannot be resolved on a motion to dismiss."  *Kronenberg v. Allstate Ins. Co.*, 18-CV-6899, 2020 WL 1234603, at *3 (E.D.N.Y. Mar. 13, 2020) (internal quotation marks and citations omitted).  Therefore, defendants' motion to dismiss must be denied because plaintiffs have properly pleaded consumer-oriented and materially deceptive conduct.[6]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

---

[6] Defendants' argument that plaintiffs are not entitled to attorney's fees "under any policy provision or statute," (Dkt. No. 35, Attach. 6 at 15), must also be rejected because plaintiffs have stated a valid § 349 claim and § 349 permits prevailing plaintiffs to recover attorney's fees.  *See* N.Y. Gen. Bus. Law § 349 (h).

**ORDERED** that defendants' partial motion to dismiss (Dkt. No. 35) is **DENIED**; and it is further

**ORDERED** that the parties contact the magistrate judge to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

Dated: May 29, 2024
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge